"FILED
"SALINE COUNTY
CIRCUIT CLERK

2019 MAY 24  PM 1:30

IN THE CIRCUIT COURT OF SALINE COUNTY, ARKANSAS  D 2

BRODERIC ARMSTEAD                                    PLAINTIFF

v.                          CASE NO. 63CV-19-631-3

FARMERS INSURANCE COMPANY, INC.                      DEFENDANT

## CLASS ACTION COMPLAINT

### I. INTRODUCTION

1.     Broderic Armstead insured his 2005 Cadillac Deville with Farmers Insurance Company, Inc. ("Farmers"). Armstead was involved in a vehicle collision, and Farmers declared the vehicle a total loss. As it does with all its total loss claims, Farmers used a CCC One Market Valuation Report ("CCC One Report") to determine the actual cash value. Based on the report, Farmers valued the actual cash value or replacement cost of the vehicle at $5,380.00. This is less than the actual cash value of the vehicle and less than what was required to replace his vehicle with another of like kind and quality.

2.     Farmers' use of the CCC One Report to value total loss claims violates its contracts with its insureds and Arkansas law. Farmers is required to calculate actual cash value through either: (a) the cost of a specific, comparable replacement automobile, or (b) using one of two or more quotations obtained from two or more qualified dealers or appraisal services located within the local market area. Instead of following Arkansas law, Farmers uses the CCC One Report to cheat their policyholders and increase their profits. The CCC One Report systematically undervalues the insured's vehicles, resulting in a payment of less than the actual cash value for all total loss claims, saving Farmers millions of dollars each year at the expense of its insureds.

3.     Armstead brings this suit on behalf of himself and others similarly situated to recover the difference between the actual cash value of his vehicle and what he was paid, punitive damages, costs, and attorneys' fees. Plaintiff also asks the Court to declare that the use of the CCC One Report to adjust first-party insurance claims violates Arkansas law and to permanently enjoin its use.

## II. PARTIES, JURISDICTION, AND VENUE

4.     Plaintiff Broderic Armstead is a resident and citizen of Saline County, Arkansas. At all times relevant to this Complaint, he had a motor vehicle insurance policy with Farmers Insurance Company, Inc.

5.     Defendant Farmers Insurance Company, Inc. is incorporated and has its principal place of business in Kansas. It is licensed to do business in Arkansas, and its registered agent for service is the Corporation Service Company, 300 South Spring Street, Suite 900, Little Rock, Arkansas 72201.

6.     This Court has subject matter jurisdiction pursuant to Ark. Const. amend. 80, § 6 and Ark. Code Ann. § 16-13-201.

7.     Venue is proper in this Court because Plaintiff resided in Saline County at the time of the events which gave rise to this cause of action, and the accident occurred in Saline County. Ark. Code Ann. § 16-60-101.

## III. FACTUAL ALLEGATIONS

8.     Armstead was involved in a motor vehicle accident in March 2016, which resulted in substantial damage to his 2005 Cadillac DeVille. Armstead insured his vehicle with Defendant Farmers Insurance Company, Inc., and he filed a claim regarding his property damage claim. Farmers determined that the vehicle was a total loss.

9.     Armstead's insurance policy with Farmers contained a clause providing for the adjustment and settlement of total loss claims based on actual cash value or replacement with another of like kind or quality. Upon information and belief, this is Farmers' standard automobile insurance policy issued to insureds in the state of Arkansas.

10.     Armstead has currently been unable to locate a copy of his policy to attach to this complaint, and Farmers did not respond to his request for a copy of his policy.

11.     To adjust Armstead's claim, Farmers used a report from a third-party corporation, CCC Information Services, Inc. The report is known as the CCC One Report. The CCC One Report is sold almost exclusively to insurance companies, and it is marketed as reducing the cost of total value settlements. Upon information and belief, Farmers uses the CCC One Report to calculate its offers of all total loss claims.

12.     Farmers presented the CCC One Report to Armstead as representing the "actual cash value" of the vehicle, and, based on the CCC One Report, Farmers paid $5,380.00 to adjust Armstead's claim. *See* CCC One Report, attached as Exhibit "A."

13. The CCC One Report systematically undervalues vehicles by making a series of arbitrary and unexplained adjustments to the vehicles contained in the report. For instance, the CCC One Report bases its estimate on vehicles listed for sale in Tupelo, Tulsa, and Oklahoma City, all more than 200 miles from his home in Benton, Arkansas.

14. The CCC One Report automatically discounts a certain amount from the list value of vehicles it uses for comparison for "condition." For example, the value of all three vehicles listed in the report were adjusted $884.00 for "condition." Neither Farmers nor the report explain the amount discounted or how that amount was determined. However, this serves to immediately lower the cash price paid to covered parties.

15. The CCC One Report makes other adjustments to the vehicles used for comparison for mileage and options, but the report does not explain how or why those adjustments are made.

16. The effect of these adjustments is to reduce the payment on the claim to an amount less than the actual cash value and far less than is required to purchase a replacement vehicle of like kind and quality.

17.   Farmers knows that the CCC One Report undervalues vehicles. Despite knowing that the CCC One Report undervalues vehicles, Farmers continues to use it to determine the amount to pay claimants.

18.   Arkansas law requires that Farmers, when adjusting or settling first party automobile total losses, either provide a replacement vehicle, provide a cash settlement based on a specific replacement vehicle if one is available in the local market area, or use "one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is located in the local market area." Ark. Ins. Regulation 43, § 10(a)(2). If the insurer deviates from one of those methods, the deviation must be supported by documentation giving particulars of the automobiles condition, and "[a]ny deductions from such cost, including deduction for salvage, must be measurable, discernable, itemized, and specified as to dollar amount and shall be appropriate in amount." Ark. Ins. R. 43, § 10(a)(3). Further, "[t]he basis for such settlement shall be fully explained to the first party claimant." Ark. Ins. R. 43, § 10(a)(3).

19.   CCC Information Services, Inc. is not a qualified dealer or appraisal service located in Saline County, Arkansas. While CCC

Information Services, Inc. is registered with the Arkansas Secretary of State to do business in Arkansas, it does not maintain any offices in the state of Arkansas.

20.    Farmers did not provide documentation about why it needed to deviate from one of the two approved methods for Armstead's vehicle, and there was nothing unique about Armstead's vehicle that would justify deviating from the methods approved under Arkansas law.

21.    Farmers knows or should know that using the CCC One Report to determine actual cash value violates Arkansas law. Despite knowing that the practice is unlawful, Farmers uses the practices because it saves Farmers millions of dollars. Farmers can achieve this savings because the cost of obtaining an appraisal and litigating the value of a property damage claim exceeds the difference in value between the CCC One Report and the actual cash value of the vehicle.

## IV. CLASS ACTION ALLEGATIONS

22.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

23.    Plaintiff brings this as a class action under Rule 23 of the *Arkansas Rules of Civil Procedure.*

24. Members of the putative class are so numerous that joinder of all such members is impracticable. The exact size of the putative class is unknown, but may be easily determined from records maintained by Farmers.

25. There are common questions of law and fact applicable to the putative class with respect to liability, relief, and anticipated affirmative defenses. Common questions of law and fact include:

a. Whether Farmers has a practice of using the CCC One Report to determine actual cash value;

b. Whether Regulation § 43, § 10 is incorporated into the terms of Farmers's automobile insurance policies;

c. Whether Farmers's practices violated Regulation 43, § 10;

d. Whether CCC Information Services, Inc. is a qualified dealer or appraiser in the local market area; and

e. By what percentage does the CCC One Report undervalue cars vis a vis their actual cash value.

26.    Armstead's claims are typical of the putative class. Like all other putative class members, Armstead had a total loss automobile claim that was settled and adjusted using the CCC One Report.

27.    Armstead will fairly and adequately protect the interest of the putative class. He has no conflicts with putative class members and has suffered the same injury as members of the putative class.

28.    Armstead's counsel possesses the requisite resources and experience in class action litigation to adequately represent Plaintiffs in prosecuting the claims here.

29.    The questions of law and fact common to Plaintiff and members of the putative class predominate over any question affecting only individual class members. These common questions concerning Farmers' wrongdoing must be resolved for all class members.

30.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Farmers engages in a common business practice of using the CCC One Report to adjust total loss claims, which is alleged to violate Arkansas law, and it is not unfair to require Farmers to litigate its business practice on a class-wide basis. Moreover, class members' individual damage claims are too small to make individual

litigation an economically viable alternative. But despite the small size of any one individual's claim standing alone, the aggregate value of the practice is substantial.

31. Armstead's class claims are appropriate to proceed under the Arkansas Deceptive Trade Practices Act. Act 986 of 2017 – which purports to prohibit most private class actions under the ADTPA – is an unconstitutional intrusion into the Arkansas Supreme Court's exclusive authority to "prescribe the rules of pleading, practice and procedure for all courts." Ark. Const. Amend. 80, § 3; *see also Johnson v. Rockwell Automation,* 2009 Ark. 241, 308 S.W.3d 135 (holding two provisions of Arkansas Civil Justice Reform Act were unconstitutional); *Summerville v. Thrower,* 369 Ark. 231, 253 S.W.3d 415 (2007) (holding statute requiring reasonable cause affidavit was unconstitutional); *Weidrick v. Arnold,* 310 Ark. 138, 835 S.W.2d 843 (1992) (holding statute requiring 60-day notice before filing medical malpractice claim was unconstitutional).

### V. CAUSES OF ACTION
### COUNT I: ARKANSAS DECEPTIVE TRADE PRACTICES ACT

32. Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

33.   Arkansas law requires that an insurer adjust total loss automobile claims by providing the insured with enough money to purchase a specific comparable replacement vehicle in the local market area, or, if no comparable vehicle is available, using one of two or more quotations from a local dealer or appraiser. Ark. Ins. R. 43, § 10.

34.   Farmers adjusts total loss automobile claims by relying on the CCC One Report, even though CCC Information Services, Inc. is not a local dealer or appraiser and even though the report does not provide the insured with sufficient funds to purchase a comparable replacement automobile in the market area.

35.   Farmers engaged in an unconscionable, false, or deceptive act or practice in business, commerce, or trade when it used the CCC One Report to adjust Plaintiff's total loss claim. Farmers also used the same unconscionable, false, or deceptive act or practice in using the CCC One Report to adjust all of its total loss claims in Arkansas. *See* Ark. Code Ann. § 4-88-107(a)(10). *See also* Ark. Inc. R. 43, § 1 (expressly providing that violations of the Insurance Department's regulations regarding unfair claims settlement practices "constitute an unfair or deceptive act or practice in the business of insurance.").

Page 11 of 19

36.   Plaintiff and putative class members justifiably relied on Farmers' representation about the actual cash value of the vehicle.

37.   Defendant's conduct proximately caused damage to Plaintiff and putative class members. Plaintiff and putative class members seek compensatory damages in an amount equal to the difference between the amount paid to them to adjust total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

38.   Farmers knew or ought to have known that its conduct would result in injury to Plaintiff and putative class members and it continued in such conduct in reckless disregard of the consequences. As a result, Plaintiff and putative class members are entitled to punitive damages.

39.   Plaintiff and the putative class members are entitled to an award of attorneys' fees, costs, and expenses in bringing their Deceptive Trade Practices Act claim.

## COUNT II: FRAUD IN THE INDUCEMENT

40.   Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

41.   Farmers falsely represented that the amount in the CCC One Report represented the actual cash value of Armstead's automobile. Farmers made the same false representation to every other putative class member.

42.   Farmers knew that its representation was false. First, Farmers knew that Arkansas law requires that an insurer use one of the methods identified in Regulation 43 to determine actual cash value and that the CCC One Report was not a permissible method. Further, Farmers knew that the CCC One Report systematically generated valuations that were lower than the actual cash value that would have resulted had it obtained a valuation from a qualified local dealer or appraiser as required by Arkansas law.

43.   Farmers intended to induce and coerce Plaintiff and putative class members into settling their total loss claims for less than they would have if Farmers had complied with Arkansas law and obtained a quotation from a qualified dealer or appraiser located in the local market area.

44.   Plaintiff and putative class members justifiably relied on Farmers' representation about the actual cash value. Indeed, because the misrepresentation goes to a material matter, reliance is presumed. *Manhattan Credit Co. v. Burns*, 230 Ark. 418, 323 S.W.2d 206 (1959) ("[R]eliance is to be presumed when, as here, the misrepresentation goes to a material matter.");

*Pickering v. Garrison*, 2009 Ark. App. 107, at *13 ("Reliance is presumed when the misrepresentation goes to a material matter.").

45.    Farmers' conduct proximately caused damages. Plaintiff and putative class members suffered damages in an amount equal to the difference between the amount paid to them to adjust their total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

46.    Defendant knew or ought to have known that its conduct would result in injury to Plaintiff and putative class members and it continued in such conduct in reckless disregard of the consequences. As a result, Plaintiff and putative class members are entitled to punitive damages.

### COUNT III: BAD FAITH

47.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

48.    Farmers acted in bad faith to avoid liability under its policy issued to Armstead. Farmers knew that its method of settling total loss claims violated Arkansas law and would result in a lower payment to Armstead than if Farmers would have obtained a quotation from a qualified local dealer or appraiser. Despite this knowledge, Farmers fraudulently

presented the CCC One Report to Armstead as representing the actual cash value of his vehicle.

49.   Farmers did more than merely refuse to pay a claim. Farmers intentionally violated Arkansas law to save itself money at the expense of its insured. Farmers' conduct was dishonest and oppressive and was carried out with a state of mind characterized by contempt for its insureds.

50.   Farmers' conduct proximately caused damages. Plaintiff and putative class members suffered damages in an amount equal to the difference between the amount paid to them to adjust total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

51.   Farmers knew or ought to have known that its conduct would result in injury to Plaintiff and putative class members and it continued in such conduct in reckless disregard of the consequences. As a result, Plaintiff and putative class members are entitled to punitive damages.

## COUNT IV: BREACH OF CONTRACT

52.   Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

53.   Armstead and Farmers entered into a contract. Among other things, the policy provides for the adjustment and settlement of total losses

based on "actual cash value or replacement with another of like kind or quality."

54.     Arkansas law requires that Farmers either provide a replacement vehicle, provide a cash settlement based on a specific replacement vehicle if one is available in the local market area, or use "one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is located in the local market area." Ark. Ins. Regulation 43, § 10(a)(2). If the insurer deviates from this method, it must provide documentation for the deviation, including giving particulars of the automobiles condition, and "[a]ny deductions from such cost, including deduction for salvage, must be measurable, discernable, itemized, and specified as to dollar amount and shall be appropriate in amount." Ark. Ins. R. 43, § 10(a)(3). Further, "[t]he basis for such settlement shall be fully explained to the first party claimant." Ark. Ins. R. 43, § 10(a)(3). The provisions of Ark. Ins. R. 43 are incorporated into the insurance contract as a matter of law. *See First Sec. Bank v. John Doe 1, 2, & 3*, 297 Ark. 254, 257, 760 S.W.2d 863, 865 (1988).

55.   Armstead and putative class members did what the contract required of them.

56.   Farmers breached the contracts by using the CCC One Report instead of using the methods required by Arkansas law.

57.   As a result of Farmers' breach of contract, Plaintiff and putative class members suffered damages in an amount equal to the difference between the amount paid to them to adjust total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

## VI. JURY DEMAND & PRAYER FOR RELIEF

58.   Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

59.   Article 2, § 7 of the Arkansas Constitution provides that "The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy[.]" Further, Article 2, § 13 also guarantees every person a "remedy in the laws for all injuries or wrongs . . .." Plaintiff demands a remedy in the laws for all injuries and wrongs alleged, and a trial by jury on all issues so triable.

60.   WHEREFORE, Plaintiff respectfully requests this Court:

a.   Certify a class defined as:

> All individuals insured by Farmers under a policy issued or effective in Arkansas who: (a) had a total loss claim with Farmers; (b) that received a settlement calculated using CCC One Report; (c) during the period from May 24, 2014 to the present.

b.   Appoint Broderic Armstead as class representative;

c.   Appoint Holleman & Associates, P.A. and Brad Hendricks Law Firm as class counsel;

d.   Declare that Farmers' practice of using the CCC One Report to adjust total loss claims violates Arkansas law;

e.   Enjoin Farmers from using the CCC One Report to adjust future total loss claims in the state of Arkansas;

f.   Award his compensatory damages in an amount equal to the difference between the actual cash value of his vehicle and the amount Farmers paid;

g.   Award his punitive damages in an amount sufficient to punish Farmers for its wrongdoing and to deter others from engaging in similar wrongdoing;

h.     Award Plaintiff all recoverable costs, expenses, and attorneys' fees incurred in prosecuting this action, together with all applicable interest; and

i.     Grant Plaintiff all such further relief deemed just and appropriate,

Respectfully Submitted,

**HOLLEMAN & ASSOCIATES, P.A.**
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

By: _____
John Holleman, ABN 91056
*jholleman@johnholleman.net*
Timothy A. Steadman, ABN 2009113
*tim@johnholleman.net*
Jerry Garner, ABN 2014134
*jerry@johnholleman.net*

&

Lloyd "Tre" Kitchens, ABN 99075
*tkitchens@bradhendricks.com*
**THE BRAD HENDRICKS LAW FIRM**
500 C Pleasant Valley Drive
Little Rock, AR 72227
Telephone (501) 221-0444

# CCC ONE — MARKET VALUATION REPORT

Prepared for FARMERS INSURANCE COMPANY, INC:



## REPORT SUMMARY

### CLAIM INFORMATION

| | |
|---|---|
| Owner | Armstead, Brodaric |
| | 620 Columbia Ave Apt 2 |
| | Benton, AR 72015 |
| Loss Vehicle | 2005 Cadillac DeVille 4dr Sdn |
| Loss Incident Date | 03/04/2016 |
| Claim Reported | 03/07/2016 |

### INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 80505420 |
| Claim Reference | 3005644951-1-2 |
| Adjuster | Diamond, Gregory |
| Odometer | 145,926 |
| Last Updated | 03/07/2016 10:14 AM |



### VALUATION SUMMARY

| | |
|---|---|
| Base Vehicle Value | $ 4,700.00 |
| Condition Adjustment | + $ 600.00 |
| Adjusted Vehicle Value | $ 5,300.00 |
| **Total** | **$ 5,300.00** |

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

```
EXHIBIT
A
```

The CCC ONE Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle. Based on information provided to CCC by FARMERS INSURANCE COMPANY, INC.

[illegible text] ... 125,700.

**BASE VEHICLE VALUE**
This is derived from comparable vehicles available or recently available in the marketplace at or near time of valuation per our valuation methodology described on the next page.

**ADJUSTED VEHICLE VALUE**
This is determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes, such as optional equipment due to other factory equipment.

**Inside the Report**

Valuation Methodology ............... 2
Vehicle Information ................. 3
Vehicle Condition .................. 4
Comparable Vehicles ................ 5
Valuation Notes ................... 10
Supplemental Information .......... 11

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

# CCC⬤ONE MARKET VALUATION REPORT

Owner: Armstead, Broderic
Claim: 3005644851-1-2

# VALUATION METHODOLOGY

## How was the valuation determined?



**CLAIM INSPECTION**
FARMERS INSURANCE COMPANY, INC. has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



**DATABASE REVIEW**
CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.



**SEARCH FOR COMPARABLES**
When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors



**CALCULATE BASE VEHICLE VALUE**
Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the weighted average of the adjusted values of the comparable vehicles based on the following factors:

- Source of the data (such as inspected versus advertised)
- Similarity (such as equipment, mileage, and year)
- Proximity to the loss vehicle's primary garage location
- Recency of information



© Copyright 2015 CCC Information Services Inc. All Rights Reserved

# CCC ONE. MARKET VALUATION REPORT

 VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | BENTON, AR 72015 |
| VIN | 1G6KD57Y35U170555 |
| Year | 2005 |
| Make | Cadillac |
| Model | DeVille |
| Body Style | 4dr Sdn |
| Body Type | Sedan |
| Engine - | |
| Cylinders | 8 |
| Displacement | 4.6L |
| Fuel Type | Gasoline |
| Carburation | SFI |
| Transmission | Automatic Transmission Overdrive |
| Curb Weight | 3978 lbs |

## VEHICLE ALLOWANCES

| | | |
|---|---|---|
| Odometer | 145,926 | - 548 |
| Options | | |
| Memory Package | Reported | + 52 |
| Home Link | Reported | + 24 |
| Heated Seats | Reported | + 55 |
| Rear Heated Seats | Reported | + 41 |
| Ventilated Seats | Reported | + 47 |
| Parking Sensors | Reported | + 55 |
| Aftermarket Film Tint | Reported | + 30 |
| Signal Integrated Mirrors | Not Present | - 15 |

Reported* Option(s) added after initial valuation

## VEHICLE HISTORY SUMMARY

| CCC VINguard® | 1 Collision Estimate | |
|---|---|---|
| | 2 Vehicle Market History Information | 05/26/2005 |
| Experian AutoCheck | No Title Problem Found | |
| Insurance Services Organization/ National Insurance Crime Bureau | 2 Records Found | |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

CCC ONE  MARKET VALUATION REPORT

Owner: Armstead, Broderic
Claim: 3005644851-1-2



 VEHICLE INFORMATION

## VEHICLE HISTORY SUMMARY

National Highway Traffic    Recall
Safety Administration

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

# CCC ONE. MARKET VALUATION REPORT

 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| Odometer | 145,925 | |
| Transmission | Automatic Transmission | ✓ |
| | Overdrive | ✓ |
| Power | Power Steering | ✓ |
| | Power Brakes | ✓ |
| | Power Windows | ✓ |
| | Power Locks | ✓ |
| | Power Mirrors | ✓ |
| | Power Driver Seat | ✓ |
| | Power Passenger Seat | ✓ |
| | Power Trunk/Gate Release | ✓ |
| Decor/Convenience | Air Conditioning | ✓ |
| | Climate Control | |
| | Tilt Wheel | ✓ |
| | Cruise Control | ✓ |
| | Rear Defogger | ✓ |
| | Intermittent Wipers | ✓ |
| | Console/Storage | |
| | Memory Package | |
| | Keyless Entry | ✓ |
| | Message Center | |
| | Home Link | |
| | Wood Interior Trim | |
| Seating | Bucket Seats | |
| | Reclining/Lounge Seats | ✓ |
| | Leather Seats | |
| | Heated Seats | |
| | Rear Heated Seats | |
| | Ventilated Seats | |
| Radio | AM Radio | ✓ |
| | FM Radio | ✓ |
| | Stereo | ✓ |

The ✓ is the list is the equipment on the loss vehicle that FARMERS INSURANCE COMPANY INC., provided to CCC.

Standard. This equipment is included in the base configuration of the vehicle at time of purchase.

Additional Equipment that is not standard but was added to on the loss vehicle.

© Copyright 2015 CCC Information Services Inc. All Rights Reserved

# CCC ONE  MARKET VALUATION REPORT

Owner: Armstead, Broderic
Claim: 3005644851-1-2

#  VEHICLE INFORMATION

## VEHICLE EQUIPMENT

|  |  |  |
|---|---|---|
|  | Search/Seek | ✓ |
|  | CD Player | ✓ |
|  | Steering Wheel Touch Controls | ✓ |
| Wheels | Aluminum/Alloy Wheels | ✓ |
| Safety/Brakes | Air Bag (Driver Only) | ✓ |
|  | Passenger Air Bag | ✓ |
|  | Anti-lock Brakes (4) | ✓ |
|  | 4-Wheel Disc Brakes | ✓ |
|  | Front Side Impact Air Bags | ✓ |
|  | Parking Sensors | ✓ |
|  | Communications System | ✓ |
|  | Hands Free | ✓ |
|  | Alarm | ✓ |
|  | Traction Control | ✓ |
| Exterior/Paint/Glass | Dual Mirrors | ✓ |
|  | Heated Mirrors | ✓ |
|  | Body Side Moldings | ✓ |
|  | Aftermarket Ext. Tint | ✓ |
|  | Clearcoat Paint | ✓ |
|  | Metallic Paint | ✓ |

© Copyright 2019 CCC Information Services Inc. All Rights Reserved.

# CCC☒ONE.  MARKET VALUATION REPORT

 VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes | Value Impact |
|---|---|---|---|
| Mechanical | ABOVE AVERAGE | clean and no leaks, there were no burn marks or cracks, buckland caused oil to leak out | $ 532 |
| Body/Glass | NORMAL | no dents but both rear door glass do not work properly | $ 0 |
| Paint | ABOVE AVERAGE | no deep scratch or peeling, minimal chips | $ 86 |
| Interior | ABOVE AVERAGE | clean and no tears or burn marks | $ 263 |
| Tires | NORMAL | 7.5/32 average | $ 0 |

FARMERS INSURANCE COMPANY INC. uses condition inspection to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for inspection is based upon age. Inspection Notes reflect observations from the appraiser capturing the loss vehicle's condition.

CCC makes no list adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to normal condition. These value adjustments are based upon analysis of condition adjustments across the United States.

© Copyright 2014 CCC Information Services Inc. All Rights Reserved.

# CCC ONE  MARKET VALUATION REPORT

Owner: Armstead, Broderic
Claim: 3005644851-1-2

## COMPARABLE VEHICLES



| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Odometer | 146,926 | 145,618 | 191,000 | 145,684 |
| Automatic Transmission | ✓ | ✓ | ✓ | ✓ |
| Overdrive | ✓ | ✓ | ✓ | ✓ |
| Power Steering | ✓ | ✓ | ✓ | ✓ |
| Power Brakes | ✓ | ✓ | ✓ | ✓ |
| Power Windows | ✓ | ✓ | ✓ | ✓ |
| Power Locks | ✓ | ✓ | ✓ | ✓ |
| Power Mirrors | ✓ | ✓ | ✓ | ✓ |
| Power Driver Seat | ✓ | ✓ | ✓ | ✓ |
| Power Passenger Seat | ✓ | ✓ | ✓ | ✓ |
| Power Trunk/Gate Release | ✓ | ✓ | ✓ | ✓ |
| Air Conditioning | ✓ | ✓ | ✓ | ✓ |
| Climate Control | ✓ | ✓ | ✓ | ✓ |
| Tilt Wheel | ✓ | ✓ | ✓ | ✓ |
| Cruise Control | ✓ | ✓ | ✓ | ✓ |
| Rear Defogger | ✓ | ✓ | ✓ | ✓ |
| Intermittent Wipers | ✓ | ✓ | ✓ | ✓ |
| Console/Storage | ✗ | ✗ | | ✗ |
| Memory Package | ✓ | | | |
| Keyless Entry | ✓ | ✓ | ✓ | ✓ |
| Message Center | ✓ | ✓ | ✓ | ✓ |
| Home Link | ✓ | ✗ | ✗ | ✓ |
| Woodgrain Trim | ✓ | ✓ | ✓ | ✓ |
| Bucket Seats | ✗ | ✗ | ✗ | ✗ |
| Reclining/Lounge Seats | ✓ | ✓ | ✓ | ✓ |
| Leather Seats | ✓ | ✓ | ✓ | ✓ |
| Heated Seats | ✗ | ✗ | | ✗ |
| Rear Heated Seats | | | | |
| Ventilated Seats | | | | ✗ |
| AM Radio | ✓ | ✓ | ✓ | ✓ |
| FM Radio | ✓ | ✓ | ✓ | ✓ |
| Stereo | ✓ | ✓ | ✓ | ✓ |
| Search/Seek | ✓ | ✓ | ✓ | ✓ |
| CD Player | ✓ | ✓ | | ✓ |
| Steering Wheel Touch Controls | ✓ | | | ✓ |
| Satellite Radio | ✗ | ✗ | | ✓ |
| CD Changer/Stacker | ✗ | ✗ | ✗ | ✗ |
| Aluminum/Alloy Wheels | ✓ | ✓ | ✓ | ✓ |
| Chrome Wheels | ✗ | ✗ | ✓ | ✗ |
| Electric Glass Roof | ✗ | ✗ | ✓ | ✗ |

Comp   Updated Date: 01/11/2018
2009 Cadillac Deville 4dr Sdn 8.4.6l
Gasoline 8H
VIN 1GKXXXXXX
Dealership Tupelo First Choice Auto
Telephone (662) 226-4146
Source Dealer Ad
Stock # 18175
Distance from Benton, AR
222 Miles    Tupelo, MS

Comp   Updated Date: 11/08/2018
2009 Cadillac Deville 4dr Sdn 8.4.6l
Gasoline 8H
VIN 1GK6D54Y5XU193194
Dealership Vaden Motor...
Telephone (912) 201-9351
Source Autobuyer
Distance from Benton, AR
5614 Miles   Tulsa, OK

Comp   Updated Date: 02/08/2018
2008 Cadillac Deville 4dr Sdn 8.4.6l
Gasoline 8H
VIN 1GK6D54Y5XU123679
Dealership Jim Norton Toyota of Oklahoma
Telephone M(9) 721-1931
Source Dealer
Stock # 6D23679
Distance from Benton, AR
205 Miles   Oklahoma City, OK

Comparable vehicles used in the determination of the base vehicle value are used in the replacement vehicles but are reflective of the market value, and may no longer be available for sale.

List Price is the sticker price of a inspected dealer vehicle and the advertised price for the newest sell vehicle.

Distance is based upon a straight line between loss and comparable vehicle location.

The Condition Adjustment sets the comparable vehicle to Normal condition which the loss vehicle is also compared to in the Vehicle Condition section.

© Copyright 2015 CCC Information Services Inc. All Rights Reserved



# CCC◉ONE. MARKET VALUATION REPORT

Owner: Armstead, Broderic
Claim: 3005644S51-1-2

## COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Driver Side Air Bag | ✔ | ✔ | ✔ | ✔ |
| Passenger Air Bag | ✔ | ✔ | ✔ | ✔ |
| Antilock Brakes (4) | ✔ | ✔ | ✔ | ✔ |
| 4-Wheel Disc Brakes | ✔ | ✔ | ✔ | ✔ |
| Front Side Impact Air Bags | ✔ | ✔ | ✔ | ✔ |
| Parking Sensors | ✔ | ✗ | ✔ | ✗ |
| Communications System | ✔ | ✔ | ✔ | ✔ |
| Hands Free | ✔ | ✔ | ✔ | ✔ |
| Alarm | ✔ | ✗ | ✔ | ✔ |
| Traction Control | ✔ | ✔ | ✔ | ✔ |
| Dual Mirrors | ✔ | ✔ | ✔ | ✔ |
| Heated Mirrors | ✔ | ✔ | ✔ | ✔ |
| Body Side Moldings | ✔ | ✔ | ✔ | ✔ |
| Tinted Glass | ✗ | ✔ | ✗ | ✔ |
| Aftermarket Film Tint | ✔ | ✗ | ✗ | ✗ |
| Signal Integrated Mirrors | ✗ | ✔ | ✔ | ✔ |
| Clearcoat Paint | ✔ | ✗ | ✔ | ✗ |
| Metallic Paint | ✔ | ✗ | ✗ | ✗ |
| California Emissions | ✗ | ✗ | ✗ | ✔ |
| | | | | |
| List Price | | $ 5,430 | $ 5,935 | $ 5,500 |
| Adjustments: | | | | |
| Options | | $ 282 | $ 437 | $ 282 |
| Mileage | | - $ 7 | - $ 380 | - $ 20 |
| Condition | | $ 884 | $ 884 | $ 884 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC ONE   MARKET VALUATION REPORT



Owner: Armstead, Broderic
Claim: 3005844851-1-2

## VALUATION NOTES

This Market Valuation Report has been prepared exclusively for use by FARMERS INSURANCE COMPANY, INC., and no other person or entity is entitled to or should rely upon this Market Valuation Report, and/or any of its contents. CCC is one source of vehicle valuations, and there are other valuation sources available.

Regulations concerning vehicle value include Arkansas Insurance Department Rule 43.

Any person who knowingly presents a false or fraudulent insurance claim for the payment of a loss may be guilty of a crime and may be subject to fines and confinement in state prison.

© Copyright 2018 CCC Information Services Inc. All Rights Reserved

# CCC⬤ONE. MARKET VALUATION REPORT

## SUPPLEMENTAL INFORMATION

Owner: Armstead, Broderic
Claim: 3005644851-1-2

### VEHICLE HISTORY INFORMATION

**VINguard®**

VINguard® Message: VINguard has decoded this VIN without any errors

ISO Vehicle History:

| | |
|---|---|
| Number of times reported to ISO: | 2 |
| ISO's file number: | H0238587202 |
| Loss date: | 03/04/2016 |
| Phone: | 8004357764 |
| Claim ref: | 300564485111 |
| Loss date: | 03/04/2016 |
| Phone: | 8004357764 |
| Claim ref: | 300564485112 |

Collision History Information:

COLLISION INCIDENT REPORTED BY NATIONWIDE ENTERPRISE ON 07/12/2013

Claim #: 6393D 15256409391301U/U1 in LITTLE ROCK, AR

| | |
|---|---|
| Repair Estimate: 1153.77 | Miles: 088704 |
| Damage Location: | REAR |
| | UNKNOWN |

Vehicle Market History Information:

This vehicle was reported to CCC on 05/26/2009    Mileage: 5443

Location: CCC Inspected in HOT SPRINGS NATIONAL PARK, AR

This vehicle was reported to CCC on 05/26/2005    Mileage: 5443

Location: CCC Inspected in HOT SPRINGS NATIONAL PARK, AR

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

# CCC ONE  MARKET VALUATION REPORT

Owner: Armstead, Broderic
Claim: 3005644851-1-2

## SUPPLEMENTAL INFORMATION

 **EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT**

| TITLE CHECK | | RESULTS FOUND |
|---|---|---|
| Abandoned | ✓ | No Abandoned Record Found |
| Damaged | ✓ | No Damage Record Found |
| Fire Damage | ✓ | No Fire Damage Record Found |
| Grey Market | ✓ | No Grey Market Record Found |
| Hail Damage | ✓ | No Hail Damage Record Found |
| Insurance Loss | ✓ | No Insurance Loss Record Found |
| Junk | ✓ | No Junk Record Found |
| Rebuilt | ✓ | No Rebuilt Record Found |
| Salvage | ✓ | No Salvage Record Found |

| EVENT CHECK | | RESULTS FOUND |
|---|---|---|
| NHTSA Crash Test Vehicle | ✓ | No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | ✓ | No Frame Damage Record Found |
| Major Damage Incident | ✓ | No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | ✓ | No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | ✓ | No Odometer Problem Record Found |
| Recycled | ✓ | No Recycled Record Found |
| Water Damage | ✓ | No Water Damage Record Found |
| Salvage Auction | ✓ | No Salvage Auction Record Found |

| VEHICLE INFORMATION | | RESULTS FOUND |
|---|---|---|
| Accident | ✓ | No Accident Record Found |
| Corrected Title | ✓ | No Corrected Title Record Found |
| Driver Education | ✓ | No Driver Education Record Found |
| Fire Damage Incident | ✓ | No Fire Damage Incident Record Found |
| Lease | ✓ | No Lease Record Found |
| Lien | ✓ | No Lien Record Found |
| Livery Use | ✓ | No Livery Use Record Found |
| Government Use | ✓ | No Government Use Record Found |
| Police Use | ✓ | No Police Use Record Found |
| Fleet | ✓ | No Fleet Record Found |
| Rental | ✓ | No Rental Record Found |
| Fleet and/or Rental | ✓ | No Fleet and/or Rental Record Found |
| Repossessed | ✓ | No Repossessed Record Found |
| Taxi Use | ✓ | No Taxi Use Record Found |
| Theft | ✓ | No Theft Record Found |
| Fleet and/or Lease | ✓ | No Fleet and/or Lease Record Found |
| Emissions Safety Inspection | ✓ | No Emissions Safety Inspection Record Found |
| Duplicate Title | ✓ | No Duplicate Title Record Found |

CCC provides FARMERS INSURANCE COMPANY, INC. information regarding the Experian regarding the 2005 Cadillac Bayside sedan (1G6KD57Y35U170332). This report is provided for informational purposes. Unless specifically noted in this Valuation Detail, CCC does not assess the value of the vehicle before conducting information...

LEGEND:
✓ No Record Found
⚫ Event Found
⊗ Information Needed

TITLE CHECK

AutoCheck's results for these vehicles covers all applicable title brands. Which could have a significant impact on the value of the vehicle.

EVENT CHECK

AutoCheck's results for this two vehicle were not discover any event that impacts the vehicle's automotive problem. These problems can indicate possible issues certificate, theft, or other significant problem.

VEHICLE INFORMATION

AutoCheck reports for these vehicle report applicable information that indicates a significant automotive problem. These problems can indicate past present ownership, theft, or other significant problem.

ODOMETER CHECK

AutoCheck reports this the vehicle odometer indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by comparing the reported odometer readings less than in previously reported value. Other odometer events can locate events of tampering or possible odometer problem.

# CCC ONE. MARKET VALUATION REPORT

Owner: Armstead, Broderic
Claim: 3005644851-1-2

## SUPPLEMENTAL INFORMATION

### FULL HISTORY REPORT RUN DATE: 03/07/2016

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 11/04/2004 | WARREN, MI | | Motor Vehicle Dept. | TITLE |
| 11/04/2004 | WARREN, MI | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 04/14/2005 | TN | 5435 | Auto Auction | REPORTED AT AUTO AUCTION AS MANUFACTURER VEHICLE |
| 04/28/2005 | HOT SPRINGS NATIONAL PARK, AR | 5443 | Dealer Record | VEHICLE IN DEALER INVENTORY |
| 07/03/2005 | HOT SPRINGS VILLAGE, AR | 6743 | Motor Vehicle Dept. | TITLE |
| 07/03/2005 | HOT SPRINGS VILLAGE, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 06/28/2006 | HOT SPRINGS VILLAGE, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 05/24/2007 | HOT SPRINGS VILLAGE, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 05/27/2008 | HOT SPRINGS VILLAGE, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 07/08/2009 | HOT SPRINGS VILLAGE, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 06/25/2010 | HOT SPRINGS VILLAGE, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 05/24/2011 | HOT SPRINGS VILLAGE, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 04/27/2012 | LITTLE ROCK, AR | 65025 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 04/23/2013 | LITTLE ROCK, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 02/20/2014 | LITTLE ROCK, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 03/01/2014 | LITTLE ROCK, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 05/23/2015 | LITTLE ROCK, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |

AUTOCHECK TERMS AND CONDITIONS:

Electronic Report is compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on this vehicle's Report. Experian searches data from additional sources where possible, but all occurrences may not be reflected on the Report.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC⬛ONE  MARKET VALUATION REPORT

Owner: Armstead, Broderic
Claim: 3005644851-1-2

## SUPPLEMENTAL INFORMATION

This Report was created on information supplied by Experian by internal sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

Experian shall not be liable for any delay or failure to provide an accurate report and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, without limitation, acts of God, terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, actions, laws or acts of state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

These terms and the relationship between you, and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree, to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved

# CCC ONE  MARKET VALUATION REPORT


## SUPPLEMENTAL INFORMATION

Owner: Armstead, Broderic
Claim: 3005644851-1-2

### NHTSA VEHICLE RECALL

NHTSA Campaign ID : 14V355000

Mfg's Report Date : JUN 23, 2014

Component : ELECTRICAL SYSTEM

Potential Number Of Units Affected : 3,141,731

Summary : This defect can affect the safe operation of the airbag system. Until the recall is performed, customers should remove all items from their key rings, leaving only the ignition key. The key fob (if applicable) should also be removed from the key ring. General Motors LLC (GM) is recalling certain model year 2005-2009 Buick LaCrosse, 2006-2011 Buick Lucerne, 2000-2005 Cadillac DeVille, 2006-2011 Cadillac DTS, 2006-2014 Chevrolet Impala, and 2006-2007 Chevrolet Monte Carlo vehicles. In the affected vehicles, the weight on the key ring and road conditions or some other jarring event may cause the ignition switch to move out of the run position, turning off the engine.

Consequence : If the key is not in the run position, the air bags may not deploy if the vehicle is involved in a crash, increasing the risk of injury. Additionally, a key knocked out of the run position could cause loss of engine power, power steering, and power braking, increasing the risk of a vehicle crash.

Remedy : GM will notify owners, and dealers will install two 13mm key rings and key insert into the vehicle's ignition keys, free of charge. The manufacturer has not yet provided a notification schedule. Owners may contact General Motors customer service at 1-800-521-7300 (Buick), 1-800-458-8006 (Cadillac), and 1-800-222-1020 (Chevrolet). GM's number for this recall is 14299.

Notes : Owners may also contact the National Highway Traffic Safety Administration Vehicle Safety Hotline at 1-888-327-4236 (TTY 1-800-424-9153), or go to www.safercar.gov.

© Copyright 2015 CCC Information Services Inc. All Rights Reserved.